September 19, 2018

To: U. S. Magistrate Judge Sonja Bivens, Federal Court Southern District

From: Frederick Sims for Moh-BEEL, LLC; Defendant

Court case number: 18-cv-00128

Mobtown Merch LLC Plaintiff, Attorney Hunter Adams

v.

Moh-BEEL LLC; Frederick Sims, Defendants

## PRAYER FOR RELIEF/RECOMMENDATION

Wherefore, Defendants pray for the following relief from plaintiffs;

1. DISMISS the plaintiff's lawsuit case based on that they own rights to the mark "moh-BEEL". The mark is geographically descriptive in nature of the city and county of Mobile, Alabama as indicated by the Federally regulated United States Patent and Trademark office; **EXHIBIT A**.

"moh-BEEL" is the phonetic spelling of the city of Mobile, Alabama, that is public domain available to all in the online wikipedia dictionary since on or about the year 2001;

The phonetic spelling of Mobile varies and can be found as MOH-beel, moh-BEEL; with and without capital letters as well as portions being italicized. Additionally, there are less frequently used phonetic spellings such as MO-beel. This will also warrant different design treatments of the moh-beel. **EXHIBIT A**.

2. The plaintiff falsely represented a trademark dated April 19, 2017, on their goods; Plaintiff actually filed with the United States trademark and patent office October 25, 2017, serial number 87658881, for the moh-BEEL mark. It appears that the plaintiff is deceiving the consumers and fair competition. **EXHIBIT B.**

Subsequently, on February 25, 2018, plaintiff filed the (moh(-)BEEL) mark with the State of Alabama and they granted the plaintiff the trademark despite its use and design being (moh(.)(injunct)BEEL on their apparel and koozies.

The defendants deny this as the plaintiff mark is not exact. The design and specifics of a trademark matters.

3. The plaintiffs are illegally interfering with fair competition under Federal fair trade laws by contacting the defendants with a cease and desist letter; and discouraging of other citizens to not use the mark. Available upon request.

FILED SEP 20 '18 PM 4:07 USDC-AL S

1-32

The plaintiffs are wanting to monopolize their goods with the local consumers; In many cities large and small across the country, vendors and brick and mortar stores sale the same items. Example: New York, New Orleans, Los Angeles and Chicago to name a few.

4. The attorney filed lawsuit incorrectly as the plaintiff uses an "injunct" on their apparel with the "moh-BEEL" mark; Ex "moh.(injunct)BEEL", as oppose to a hyphen "moh-BEEL" as filed. Thus the plaintiff does not use the mark they claim ownership; When filing a trademark it is essential to file "exact and specific"; **EXHIBIT C.**

5. The plaintiffs mark of (moh.BEEL) be rescended and nullified as a trademark in State of Alabama, registration #117-811, due to Federal law in fair trade of a geographical descriptive mark of a city; **EXHIBIT A.**

6. The plaintiffs be not allowed to file any further complaints against this company or the individual now and in the future;

7. The plaintiffs pay amount to be determined for attorney fees, harassment, emotional and extreme mental duress as provided by **15 U.S.C. sec 1117**;

**NATURE OF THE CASE:**

1. The plaintiffs makes claims on defendants of **false designation of origin** that they own the mark "moh-BEEL", because they used it in commercial on or about September 2016, under the Lanham Act, 15 U.S.C.; 1125, et seq;

Response:

DENY false designation; the mark is geographical designation and is the phonetic spelling of Mobile, Alabama. **EXHIBIT A.**

**Alabama state trademark infringement**;

Response:

DENY. Federal law negates the Alabama state trademark infringement. **EXHIBIT A.**

**Unfair competition under the Alabama Deceptive Trade Practices Act**, Alabama code 8-19-1, et seq;

Response:

DENY. Federal law negates the Alabama state trademark infringement. **EXHIBIT A. Common law;**

Response:

DENY. Federal law negates the Alabama state trademark infringement. Defendants application 87626911, response from USTPO. **EXHIBIT A**.

2. The mark is **confusingly similar trade names and trademarks/service marks and prevent "further confusion" and "reputational and other harm"** to Plaintiff.

Response:

DENY. Federal law negates the Alabama state trademark infringement. **EXHIBIT A.**

3. DENY

4. DENY

5. DENY

6. DENY. Plaintiffs trademark has not been registered with the United States trademark and patent office. Its pending awaiting the defendants filed application 87626911. The USTPO denied defendants and plaintiffs application based on the mark "moh-BEEL" being geographically descriptive of Mobile, Alabama. **EXHIBIT A**.

7. DENY. Federal law negates the plaintiffs trademark with Alabama State registration. Given that the mark is geographically descriptive in nature of the city and county of Mobile, Alabama, ALL citizens have fair use to the mark under fair trade law. Example, "Mobtown", many individual's sale and trade under this mark and name associated with Mobile city and county and other cities. The plaintiff uses this mark on their apparel. **EXHIBIT A.**

8. DENY. The defendants created a brand specifically dedicated to "moh-BEEL". It is different from the plaintiffs "Mobtown" which distinguishes Mobile, Alabama, as a town and happen to utilize the phonetic spelling on a few items. Their brand is not built on "moh-BEEL" and their mission statement is different from the defendants. This is evident in that no domain was purchased by them for "moh-BEEL" while the defendants own it. They built and branded "Mobtown" and "Mobtown Merch. **EXHIBIT D**.

9. DENY. Moh-BEEL! USA was acquired to bring awareness to this beautiful city nationally. Due to the continued annoyance by the plaintiff's attorney, the defendants wanted to move away from plaintiffs alleged "ownership of (moh-BEEL)".

The defendants research to the best of our knowledge indicated that defendants are following trademark law because the defendants mark differed from the plaintiffs and the mark "moh-BEEL" is geographically descriptive of Mobile, Alabama.

Of note reference to the Lagniappe magazine a local newspaper article written and dated April 10, 2018. The owner of Optera Creative, Corrine Murray, stated that Mobtown Merch took her idea and profited off of her idea from her using the mark "MOH-BEEL" on a shirt with a ship on it back in 2013. Murray did not file a lawsuit to protect her mark at this time. She stated she was "tickled" that the plaintiffs filed a lawsuit on the defendants. **EXHIBIT E.**

This defendant being aware of the "moh-BEEL" mark through studying family history in Mobile, Alabama and his Native American ancestry in Citronelle, Alabama for many years, had a personal use shirt designed at or around September 2015, not being aware that anyone discovered the "catchy" phrase "moh-BEEL".  As a descendant of Choctaw Indian, "I am Moh-BEEL", as is many other citizens in this local area.

The defendant was born and raised in Mobile and Prichard, Alabama in 1964, by a single mother of three on welfare. The struggle was enormous on a single mother who worked hard. She was strong and showed tenacity to persevere through difficult situations and times. The meaning "moh-BEEL" was formed based on the defendant's mother who is still alive and persevering despite mountainous of illnesses. **EXHIBIT D**.

The defendant graduated from a local high school in Mobile, Alabama, and earned an opportunity to attend a community college in Northern California in 1983. The defendant played sports and eventually earned a college degree in California. The defendant worked for over twenty-five years helping and holding youth and adults alike accountable.

While in Northern California beginning in 1983, the defendants learned that back in 1964, Brookley field Air Force base closed down in Mobile, Alabama and many Mobilians migrated/relocated to Northern California after being transferred to Edwards Air Force base located in Sacramento, California. There's an area they call "little Mobile". The Mobile people took pride in where they were from and corrected Californians from pronouncing it "Mo-Bile" and "mobile phone" to pronouncing it "moh-BEEL!" to the Californians.

The defendant visited his mother in Mobile once a year for thirty years and four times a year in the last years of 2013-2017, while residing in Northern California. Her health was deteriorating. The defendant wore a personal designed shirt with "moh-BEEL" around in San Francisco, California, New Orleans, Louisiana and Mobile, Alabama in or around 2015, as a way of feeling empowerment from his city and his Native American heritage living thousands of miles away for 34 years.

Moh-BEEL LLC, became live with assistance from professionals, conducting research for the trademark, domain to start a website, social medias, business license and conceptualize building and bringing the Moh-Beel brand to life. They were all available so we applied for the trademark "moh-BEEL" with the United States trademark and patent office that's currently pending and acquired the social medias names for the

business model on or about September 2017. Any small start-up company would conduct business in this fashion.

The company was established in December 2017, for positive and empowerment of the citizens here and beyond. The company has become a sponsor and will hopefully grow to give back to the community in donations as well. The small company has sponsored a youth basketball camp and a women's professional softball team helping young women live out their dreams and bringing entertainment to the Mobile community. **EXHIBIT F.**

In regards to profiting from the sales of Moh-BEEL, LLC items, this is not the defendants source of income and livelihood.

The defendants researched many attorneys in the Northern portion of Alabama preferably and local trademark lawyers to no avail. They did not want to take on the defendant's case because it could be too time consuming and a financial burden on the defendant that may not be worth it. The defendant strongly believed that no one wanted to take the case because the attorney may not get paid given the defendants startup and financial resources.

10. DENY. Defendants applied accordingly to building a "Moh-BEEL" brand.

11. DENY. Defendants launched based on a solid plan of starting a Moh-BEEL, LLC business with purchasing and acquiring necessary items and resources needed.

12. DENY. Defendants use their specific creative treatment of the "moh-BEEL" mark. **EXHIBIT D.**

13. DENY. The defendant never spoke with the plaintiff's attorney. A representative of the defendants reached out to an attorney in Mobile, Alabama on google to gather feedback into how to proceed once it was determined that the "moh-BEEL" mark was in use by the plaintiff and Optera Creative. It just so happens to be the attorney of record for the plaintiff today.

From this defendant's information, the attorney of record listened and then spoke with the representative of the defendant about the mark. The attorney of record for the plaintiff suggested the defendants get an attorney because he represents a "friend" who is a big investor of the plaintiff. The attorney of record gave the representative of the defendant an attorney to contact in Mississippi. The defendants spoke with this attorney and he stated he does not litigate and does not want to have anything to do with the attorney and "those guys/plaintiff". We read between the line. Beware.

14. DENY. The defendant did not feel comfortable meeting and speaking with plaintiff attorney and plaintiff alone. Especially given the "cease and desist" letter it was felt there will not be a compromise or an agreement in defendant's favor. The stress of this case to standing up for the citizen's rights has caused undue psychological harm. We felt strongly to continue our startup business based on research. The information gathered appeared to give the defendant a high

probability to have success in the case. **The confusion was that if that's the case, why would an attorney file a lawsuit! To be determined.**

15. DENY. Despite the research and many calls to attorneys the defendant does not have a solid litigating attorney to represent him in a Federal court of law. Financial challenges of this case is also an issue for defendant. The defendant comes from humbling beginnings. The plaintiffs appear to have unlimited financial resources.

16. DENY. As stated the defendant did not feel comfortable meeting with the plaintiff's attorney and plaintiffs for many reasons as stated in other areas of this report.

17. DENY. Based on research and the USTPO, plaintiffs do not own "moh-BEEL" as indicated in **EXHIBIT A.**

18. **DENY in part.**

19. **DENY in part.**

20. **DENY in part.**

21. **DENY in part.**

22. DENY in part jurisdiction.

## JURISDICTION AND VENUE

22. DENY. Refer to ALL EXHIBITS to conclude.

23. DENY. The mark "moh-BEEL" is geographically descriptive of Mobile, Alabama. **EXHIBIT A.**

24. DENY. Federal law negates any State law in regards to trademarks.

25. DENY. The Federal court has jurisdiction and should be able to determine whether there is consumer confusion or the defendants caused harm to the plaintiffs.

**Consumers should be given an opportunity to determine if apparel is confusing and have a choice to choose from a vendor or store of their liking for their specific treatment of the "moh-BEEL" name.**

## FACTUAL ALLEGATIONS

26. DENY. The "moh-BEEL" mark is geographically descriptive of Mobile Alabama. The defendant was unaware of the plaintiff when initially starting the company and using financial resources to build it.

27. DENY. The "moh-BEEL" mark is geographically descriptive of Mobile Alabama and all vendors and stores has rights to its use.

28. DENY. The "moh-BEEL" mark is geographically descriptive of Mobile Alabama and available to all citizens.

29. DENY. The "moh-BEEL" mark is geographically descriptive of Mobile Alabama. The defendant was merely exercising their rights to the mark as the plaintiffs.

30. DENY. Consumers should be given an opportunity to determine if apparel is confusing and have a choice to choose from a vendor or store of their liking for their specific treatment of the "moh-BEEL" name.

**FIRST CAUSE OF ACTION:**
**False Designation of Origin in Violation of the Lanham Act 15 U. S. C. 1125(a)**

31. DENY in part.

32. DENY in part.

33. DENY in part. The mark is geographically descriptive of the city of Mobile, Alabama.

34. DENY. The mark is geographically descriptive of the city of Mobile, Alabama.

35. DENY. The "moh-BEEL" mark is geographically descriptive of Mobile, Alabama. All citizens have rights to the mark designated by Federal trademark law that negates state law. Otherwise why have Federal laws and court. Also this mark was used by defendant and Optera Creative prior to 2016. **EXHIBIT E.**

36. DENY. The mark is geographically descriptive of the city of Mobile, Alabama. Consumers and all citizens should freely have a choice to choose their treatment of the mark that is the city of Mobile and the phonetic spelling of the city of Mobile, Alabama. The mark is listed online in the wikipedia under the listing of Mobile County. The United States trademark and patent office denied the plaintiff mark based on it being geographically descriptive of Mobile, Alabama. **EXHIBIT A.**

37. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. **EXHIBIT A.**

38. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. **EXHIBIT A.**

39. DENY. The defendants felt threatened by attorney and plaintiff to dissuade and not exercise the defendants right and all other citizens right to the mark. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. **EXHIBIT A.**

7

40. DENY. The plaintiffs and attorney are wanting to monopolize a free market in the use of the mark "moh-BEEL" for their financial gain and dissuade others use of the phonetic spelling of the city of Mobile, Alabama. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. **EXHIBIT A.**

## SECOND CAUSE OF ACTION
### Alabama State Trademark Infringement Ala. Code 8-12-16

41. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free market to all citizens. **EXHIBIT A.**

42. DENY. The attorney filed lawsuit incorrectly as the plaintiff uses an "injunct" on their apparel with the "moh-BEEL" mark; Ex "moh.(injunct)BEEL", as oppose to a hyphen "moh-BEEL" as filed. Thus the plaintiff does not use the mark they claim ownership; When filing a trademark it is essential to file "exact and specific"; **EXHIBIT C.**

The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free market to all citizens. **EXHIBIT A.**

43. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free market to all citizens. Thus all citizens have the right of use of the mark that plaintiffs claim to own. Moh-BEEL, LLC concept is all positive and recognizing positive things in the city of Mobile Alabama. **EXHIBIT A.**

44. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free market to all citizens. **EXHIBIT A.**

45. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free market to all citizens. The plaintiffs should have known that other citizens have a right to the mark "moh-BEEL". **EXHIBIT A.**

## THIRD CAUSE OF ACTION
### Common Law Trademarks/Service Mark Infringement

46. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free market to all citizens. **EXHIBIT A.**

47. DENY in part. However, the mark "moh-BEEL" is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office.

The mark is fair and free market to all citizens. **EXHIBIT A**.

The defendant's small startup company is merely trying to defend itself and uphold the Federal law. Nothing more. Defendants and plaintiffs both have different treatments of the mark and should be able to agree to retain their specific design. We have ours they have theirs. The people say, "stay in your lane and we stay in our lane".

48. DENY. Federal law negates this archaic law in Alabama. It was used for individuals to monopolize free market. **EXHIBIT A**.

49. DENY. Federal law negates this archaic law in Alabama. The Alabama common law was used for individuals to monopolize free market. **EXHIBIT A**.

The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free market to all citizens. **EXHIBIT A**.

Citizens/consumers should have the right to choose their specific treatment of the city of Mobile Alabama "moh-BEEL" mark.

50. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free market to all citizens. Therefore, given that the mark is geographically descriptive of Mobile, Alabama consumers can choose vendors or stores to support other businesses. **EXHIBIT A.**

51. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free market to all citizens. The defendants are within their rights as is every citizen to fair and free market of the "moh-BEEL" mark. **EXHIBIT A**.

52. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free market to all citizens. The defendants are merely exercising their rights as all citizens should following Federal law. **EXHIBIT A**.

53. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free market to all citizens. Plaintiffs should have known that the mark "moh-BEEL" is fair and free market to all citizens. **EXHIBIT A**.

## FOURTH CAUSE OF ACTION
## Violation of the Alabama Deceptive Trade Practices Act

54. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free

market to all citizens. **EXHIBIT A**.

55. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free market to all citizens. Consumers can freely choose their vendor or store for goods of the "moh-BEEL" mark. **EXHIBIT A**.

56. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free market to all citizens. Federal law in regards to geographical descriptiveness prevails over Alabama State laws. Thus there is no deception as plaintiffs claim. **EXHIBIT A**.

57. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free market to all citizens. Thus there is no deception as plaintiffs claim. **EXHIBIT A.**

58. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free market to all citizens. Thus there is no claim deception as plaintiffs claim. **EXHIBIT A.**

59. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free market to all citizens. The plaintiffs are exaggerating and reaching to prevail in order to monopolize a mark that is the phonetic spelling of Mobile, Alabama. Basically plaintiffs are bold enough to claim "OWNERSHIP" Mobile, Alabama. **EXHIBIT A**.

60. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free market to all citizens. **EXHIBIT A**.

61. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free market to all citizens. **EXHIBIT A.**

62. DENY. The mark is geographically descriptive of the city of Mobile, Alabama as determined by the United States trademark and patent office. The mark is fair and free market to all citizens. **EXHIBIT A**.

Sincerely,

Frederick Sims for Moh-BEEL, LLC

10

| To: | Sims, Frederick Freedom B. (freedom102764@yahoo.com) |
|---|---|
| Subject: | U.S. TRADEMARK APPLICATION NO. 87626911 - MOH-BEEL - N/A |
| Sent: | 1/5/2018 4:59:31 PM |
| Sent As: | ECOM105@USPTO.GOV |
| Attachments: | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |

### UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)
### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**U.S. APPLICATION
SERIAL NO.** 87626911

**MARK:** MOH-BEEL

# *87626911*

**CORRESPONDENT
ADDRESS:**
SIMS, FREDERICK
FREEDOM B.
P.O. BOX 772
MOBILE, AL 36601

**CLICK HERE TO RESPOND TO THIS
LETTER:**
http://www.uspto.gov/trademarks/teas/response_forms.jsp

VIEW YOUR APPLICATION FILE

**APPLICANT:** Sims,
Frederick Freedom B.

**CORRESPONDENT'S
REFERENCE/DOCKET
NO:**
N/A
**CORRESPONDENT E-
MAIL ADDRESS:**

freedom102764@yahoo.com

## OFFICE ACTION

## STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.  A RESPONSE TRANSMITTED THROUGH THE TRADEMARK ELECTRONIC APPLICATION SYSTEM (TEAS) MUST BE RECEIVED BEFORE MIDNIGHT **EASTERN TIME** OF THE LAST DAY OF THE RESPONSE PERIOD.

**ISSUE/MAILING DATE:** 1/5/2018

The referenced application, preliminary amendment, and amendment to allege use have been reviewed by the assigned trademark examining attorney.  Applicant must respond timely and completely to the issues below.  15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

### SEARCH OF OFFICE'S DATABASE OF MARKS

Subject to final review by a managing attorney, the trademark examining attorney has searched the Office's database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d).  TMEP §704.02; *see* 15 U.S.C. §1052(d).

### SUMMARY OF ISSUES:



- Section 2(e)(2) Refusal—Primarily Geographically Descriptive
- Sections 1, 2, and 45 Refusal—Merely Ornamental—Class 25
- Specimen Unacceptable—Classes 9 and 24
- Amendment to Identification of Goods DENIED
- Clarification of Entity Information Required

## SECTION 2(e)(2) REFUSAL—PRIMARILY GEOGRAPHICALLY DESCRIPTIVE 

Registration is refused because the applied-for mark is primarily geographically descriptive of the origin of applicant's goods.   Trademark Act Section 2(e)(2), 15 U.S.C. §1052(e)(2); *see* TMEP §§1210, 1210.01(a).

A mark is primarily geographically descriptive when the following is demonstrated:

(1) The primary significance of the mark is a generally known geographic place or location;

(2) The goods and services for which applicant seeks registration originate in the geographic place identified in the mark; and

(3) Purchasers would be likely to make a goods-place or services-place association; that is, purchasers would be likely to believe that the goods and services originate in the geographic place identified in the mark.

TMEP §1210.01(a); *see In re Societe Generale des Eaux Minerales de Vittel S.A.*, 824 F.2d 957, 959, 3 USPQ2d 1450, 1452 (Fed. Cir. 1987); *In re Hollywood Lawyers Online*, 110 USPQ2d 1852, 1853 (TTAB 2014).

A term that is the mere misspelling or variant of the name of a geographic location is considered the equivalent of the actual name for purposes of determining the primary meaning of the mark.  *See In re Jonathan Drew, Inc.*, 97 USPQ2d 1640, 1642 (TTAB 2011) (finding the primary significance of KUBA to be "Cuba" and holding the mark KUBA KUBA primarily geographically deceptively misdescriptive of cigars); *Stabilisierungsfonds fur Wein v. Peter Meyer Windery GmbH*, 9 USPQ2d 1073, 1076 (TTAB 1988) (finding the mark GOLDENER TROPPEN to be a misspelling of "Goldtropfchen" and holding the mark deceptive for wine not from that region in West Germany); *see also Bureau Nat'l Interprofessionnel Du Cognac v. Int'l Better Drinks Corp.* , 6 USPQ2d 1610, 1625 (TTAB 1988) (finding the mark COLAGNAC to be a misspelling of "Cognac" or a combination of the terms "Cola" and "Cognac" and holding the mark primarily geographically deceptively misdescriptive of liqueur).

The applied-for mark, MOH-BEEL, is a misspelling of the geographic location Mobile—a city in Alabama. Specifically, MOH-BEEL is the phonetic spelling of Mobile. http://www.columbiagazetteer.org/main/ViewPlace/0/91299; https://en.wikipedia.org/wiki/Mobile,_Alabama. The city of Mobile is the second largest city in Alabama and has a population of over 195,000 people. https://en.wikipedia.org/wiki/Mobile,_Alabama; http://www.columbiagazetteer.org/main/ViewPlace/0/91299. Mobile is well known as a major port city and is home to the ninth largest port in America. https://en.wikipedia.org/wiki/Port_of_Mobile. The primary significance of the mark to consumers is the city of Mobile, Alabama, and the city of Mobile is a generally known geographic location.

Additionally, applicant lists a Mobile, Alabama address in the application. Therefore, applicant's goods originate in Mobile, Alabama, which is the geographic location comprising the primary significance of the applied-for mark. When there is no genuine issue that the geographical significance of a term is its primary significance, and the geographical place is neither obscure nor remote, a public association of the goods with the place is presumed if an applicant's goods originate in the place named in the mark.  TMEP §1210.04; *see, e.g., In re Cal. Pizza Kitchen Inc.*, 10 USPQ2d 1704, 1706 (TTAB 1988) (holding CALIFORNIA PIZZA KITCHEN primarily geographically descriptive of restaurant services rendered in California); *In re Handler Fenton Ws., Inc.*, 214 USPQ 848, 849-50 (TTAB 1982) (holding DENVER WESTERNS primarily geographically descriptive of western-style shirts originating in Denver).

The primary significance of applicant's mark is the geographic location of Mobile, Alabama, applicant's goods originate in Mobile, and consumers are likely to associate applicant's goods with Mobile, Alabama. Accordingly, applicant's mark is primarily geographically descriptive, and registration is refused under Section 2(e)(2) of the Trademark Act.

*Supplemental Register Advisory*

The applied-for mark has been refused registration on the Principal Register.  Applicant may respond to the refusal by submitting evidence and arguments in support of registration and/or by amending the application to seek registration on the Supplemental Register.  *See* 15 U.S.C. §1091; 37 C.F.R. §§2.47, 2.75(a); TMEP §§801.02(b), 816.  Amending to the Supplemental Register does not preclude applicant from submitting evidence and arguments against the refusal(s).  TMEP §816.04.

If applicant amends the application to seek registration on the Supplemental Register, the application effective filing date will be the date applicant meets the minimum filing requirements under 37 C.F.R. §2.76(c) for an amendment to allege use.  TMEP §§816.02, 1102.03; *see* 37 C.F.R. §2.75(b).

**SECTIONS 1, 2, and 45 REFUSAL—MERELY ORNAMENTAL—CLASS 25**

Registration is refused in Class 25 because the applied-for mark as used on the specimen of record is merely a decorative or ornamental feature of applicant's clothing and, thus, does not function as a trademark to indicate the source of applicant's clothing and to identify and distinguish applicant's clothing from others.   Trademark Act Sections 1, 2, and 45, 15 U.S.C. §§1051-1052, 1127; *see In re Lululemon Athletica Can. Inc.*, 105 USPQ2d 1684, 1689 (TTAB 2013); *In re Pro-Line Corp.*, 28 USPQ2d 1141, 1142 (TTAB 1993); TMEP §§904.07(b), 1202.03 *et seq.*

When evaluating a mark that appears to be ornamental, the size, location, dominance, and significance of the alleged mark as applied to the goods are all relevant factors in determining the commercial impression of the applied-for mark. *See, e.g., In re Lululemon Athletica Can. Inc.*, 105 USPQ2d at 1687 (quoting *In re Right-On Co.*, 87 USPQ2d 1152, 1156 (TTAB 2008)); *In re Dimitri's Inc.* , 9 USPQ2d 1666, 1667 (TTAB 1988); TMEP §1202.03(a).

With respect to clothing, consumers may recognize small designs or discrete wording as trademarks, rather than as merely ornamental features, when located, for example, on the pocket or breast area of a shirt. *See* TMEP §1202.03(a).  Consumers may not, however, perceive larger designs or slogans as trademarks when such matter is prominently displayed across the front of a t-shirt. *See In re Pro-Line Corp.*, 28 USPQ2d at 1142 (holding BLACKER THE COLLEGE SWEETER THE KNOWLEDGE centered in large letters across most of the upper half of a shirt, to be a primarily ornamental slogan that was not likely to be perceived as a source indicator); *In re Dimitri's Inc.* , 9 USPQ2d at 1667-68 (holding SUMO used in connection with stylized depictions of sumo wrestlers and displayed in large lettering across the top-center portion of t-shirts and caps, to be an ornamental feature of the goods that did not function as a trademark); TMEP §1202.03(a), (b), (f)(i), (f)(ii).

In this case, the submitted specimen shows the applied-for mark, MOH-BEEL, located directly on the upper-center area of the front of shirts and the front portion of hats, where ornamental elements often appear. *See* TMEP §1202.03(a), (b).  Furthermore, the mark is displayed in a relatively large size on the clothing such that it dominates the overall appearance of the goods.  Lastly, the applied-for mark appears to be a slogan that is merely decorative and has little or no particular source-identifying significance.

Therefore, consumers would view the applied-for mark as a decorative or ornamental feature of the goods, rather than as a trademark to indicate the source of applicant's goods and to distinguish them from others.

*In appropriate circumstances*, applicant may overcome this refusal by satisfying one of the following options:

(1)     Submit a different specimen (a verified "substitute" specimen ) that was in actual use in commerce at least as early as the filing date of the application (or prior to the filing of an amendment to allege use) and that shows proper trademark use for the identified goods in International Class 25.  Examples of acceptable specimens that show non-ornamental use on clothing include hang tags and labels used inside a garment.

(2)     Amend to the Supplemental Register, which is a second trademark register for marks not yet eligible for registration on the Principal Register, but which may become capable over time of functioning as source indicators.

(3)     Claim acquired distinctiveness under Trademark Act Section 2(f) by submitting evidence that the applied-for mark has become distinctive of applicant's goods; that is, proof that applicant's extensive use and promotion of the mark allowed consumers now directly to associate the mark with applicant as the source of the goods.

(4)     Submit evidence that the applied-for mark is an indicator of secondary source; that is, proof that the mark is already recognized as a source indicator for *other* goods or services that applicant sells/offers.

(5)     Amend the filing basis to intent to use under Section 1(b).  This option will later necessitate additional fee(s) and filing requirements.

For an overview of *all* response options referenced above and instructions on how to satisfy each option online using the Trademark Electronic Application System (TEAS) form, please go to http://www.uspto.gov/trademarks/law/ornamental.jsp.

**SPECIMEN UNACCEPTABLE—CLASSES 9 and 24**

Registration is refused because the specimen does not show the applied-for mark in use in commerce in International Classes 9 and 24.  Trademark Act Sections 1 and 45, 15 U.S.C. §§1051, 1127; 37 C.F.R. §§2.34(a)(1)(iv), 2.56(a); TMEP §§904, 904.07(a).  Specifically, the fabric-related goods identified in class 24 and the goods specified in class 9 do not appear in the specimen.  The specimen merely shows class 25 clothing-related goods with the mark appearing across the center of the goods.  Since the specimen does not show the goods listed in classes 9 and 24, the specimen fails to show use of the mark in commerce in those classes.

An application based on Trademark Act Section 1(a) must include a specimen showing the applied-for mark in use in commerce for each

thumbnail (JPEG Image, 1070 × 1718 pixels) — Scaled (50%)  https://apis.mail.yahoo.com/ws/v3/mailboxes/@.id==VjN-cbnCI7Ll..

EXHIBIT A

 **WIKIPEDIA** 

# Mobile, Alabama

   

**Mobile** (/moʊˈbiːl/ *moh-BEEL*; French pronunciation: [mɔ.bil]) is the county seat of Mobile County, Alabama, United States. The population within the city limits was 195,111 as of the 2010 United States Census,[10] making it the third most populous city in Alabama, the most populous in Mobile County, and the largest municipality on the Gulf Coast between New Orleans, Louisiana, and St. Petersburg, Florida.

| Mobile, Alabama |
|:---:|
| **City** |
| **City of Mobile** |

14

9/14/18, 3:14 PM



Plaintiff



# mobtown® skyline - St....

## $24.00

16

thumbnail (JPEG Image, 1080 × 1799 pixels) - Scaled (48%)      https://apis.mail.yahoo.com/ws/v3/mailboxes/@.id==VjN-cbnCI7Ll..

EXHiBiT B

← **Mobtown Merch**      🔍      ⋯

**HOME**    SHOP    POSTS    PHOTOS    AB

Apr 19, 2017 at 10:10am • 🌐

Keep that cold beer cold, y'all! Stylin' huggers cheap af--on the website now in your favorite **#Mobtown** design! **#mobileal #getitright #rolltide #wareagle**

USE
AS
Injuct





Injunct
As oppose
to hyphen

SOLD BY MOBTOWN MERCH

**(moh-BEEL)™ Koozie**

$4.00                    [ BUY ]

used As A hyphen

17

JOHN H. MERRILL
SECRETARY OF STATE

ALABAMA STATE CAPITOL
MONTGOMERY, AL 36130

# STATE OF ALABAMA

I, John H. Merrill, Secretary of State of the State of Alabama, having custody of the Great and Principal Seal of said State, do hereby certify that

Mobtown Merch, LLC, an Alabama limited liability company, 3378 Moffett Rd Mobile, AL  36607 has filed in this office, the necessary papers and information pursuant to Section 8-12-6 et seq, <u>Code of Alabama, 1975,</u> as last amended, to be entitled to the Legal Registration in Alabama, for a term of Five Years beginning February 27, 2018 and ending  February 27, 2023, of the following Trademark, First Used Anywhere September 30, 2016, and First Used in Alabama September 30, 2016 in Classification 12 for Retail trade under Registration Number 117-811:

*← use of An injunct*



(mob PEEL)

*– Filed with A hyphen*

In Testimony Whereof, I have hereunto set my hand and affixed the Great Seal of the State, at the Capitol, in the City of Montgomery, on this day.



**February 27, 2018**
_____
Date

John H. Merrill      *J. H. Merrill*      Secretary of State

18



filed as hyphen

19



https://moh-beelusa.com

EXHIBIT D
5 pgs





# Who
# We
# Are:

Shout it!

Since the beginning of
mankind humans have
been pushing themselves
past great limits and
beyond intangible goals, to
places previously
unfathomable.

21

9/14/18, 3:35 PM

The American dream, the
human spirit, the human
mind, is never to be
underestimated...moh-BEE
L! To inspire, to declare, to
take pride in who you are
and where you come from
in order to create positive
change in the Mobile, AL
community- beyond
boundaries of race,
religion and politics.

moh-BEEL is
strong, tenacious, humble,
empowered,
hopeful, community driven
as one for positive action.



0

EXHIBIT D







**MOH-BEELI USA_WHITE**

$35.00

0

23

**CUSTOM BACK PACK / LAPTOP BAG WITH SECRET POCKET**

$52.95



**DRAWSTRING BAG**

$32.00

🛒 0

24

**COFFEE MUG**

$19.95



**UNISEX TRIBLEND LIGHTWEIGHT ZIP-HOODIE**

$42.95

🛒0

EXHIBITE
3pgs

■■■ BAYBRIEF | MOBILE

# A new chapter

RETIRING STATE REPRESENTATIVE HONORED BY CITY COUNCIL.



*Retiring State Rep. James Buskey was honored by the Mobile City Council for his four decades in state politics this week.*

"I was a very happy birthday for State Rep. James Buskey (D-Mobile) on Tuesday, April 10.

To honor his 42 years of service as a member of the Alabama House of Representatives, councilors and Mayor Sandy Stimpson honored him with a proclamation naming Tuesday "State Representative James Buskey Day." They and several members of the local legislative delegation sang "Happy Birthday" to him.

"Thank you," Buskey said. "This is probably the most surprising thing ... that has ever happened to me."

Councilman Fred Richardson, who represents the district in which Buskey resides, gave the 10-term politician the key to the city, but acknowledged it was just for show.

"This key will not let you open any doors in the city," he said. "This key is to the heart of every citizen ... We want you to know we love you."

Stimpson gave Buskey a mayoral pin in case the 81-year-old ever decides to run for mayor.

In addition to being co-chair of the delegation for many years, Buskey recently helped set up the downtown entertainment district and legalized 10 a.m. Sunday alcohol sales, among many other things.

"I have a drinking problem ... Buskey said to those in attendance, as he dabbed at his eyes with a napkin. "I'm overwhelmed with emotion as well."

He joked that he knew there was good food at a local or statewide event if he knew the 99 representative was in attendance.

Buskey is serving his final term in the House. There are currently eight Democrats who have qualified to run for his seat in the June 3 primary. Former Mayor Sam Jones, former U.S. Rep. Hosea Weaver, Burton LeFlore, Franklin McMillion, Gregory Harris II, Henry Howard, Barton LeFlore, Franklin McMillion, Gregory Parker and Rico Washington have all qualified for the race.

The winner of the Democratic primary will face the lone Republican, Charles W. Talbert in November.

In other business, the council voted unanimously to enter into a $314,000 contract with S.C. Stagner Contracting for the first phase of structural improvements at Ladd-Peebles Stadium.

According to the project's scope of work, the repair will include new guardrails, repair of existing guardrails, painting, and repairs to existing railing and concrete areas. The project also includes temporary erosion and sediment controls.

Levon Manzie, who represents the area including the stadium, said this further proves the city's commitment to the 70-year-old stadium.

"We're committed to the upkeep of the stadium," he said. "It's an old facility. It will always need improvements.

As for what to do when the University of South Alabama opens an on-campus stadium and no longer uses the city-owned facility, Manzie said they would have to find other uses for it. Ladd-Peebles is also used as the home stadium for some high school football teams as well.

While the council approved the funding for the Ladd-Peebles improvements, the future of another city-owned stadium remains unclear.

City spokesman George Talbot said the city had gotten offers from at least two independent minor league baseball teams to use Hank Aaron Stadium once the Southern League's Mobile BayBears are finished with it when the team moves to Madison in 2020.

Talbot also said there could be interest in using it for something other than baseball in the future, but didn't elaborate.

A professional softball league, the American Softball Association, is coming to Mobile this summer. The league's four teams will play at the city's Texas Street park, Talbot said. ■

■■■ BAYBRIEF | COURTS

# Battle of the brands

MOBTOWN MERCH SUES MOH-BEEL USA FOR COPYRIGHT INFRINGEMENT

BY GABRIEL TYNES

Local clothing and lifestyle brand Mobtown Merch, whose "Mobtown," "Defend the Delta" and "We started it" (Mardi Gras) memorabilia is available at Urban Emporium, G Harvell and Red Beard's Outfitters, among other places, has filed a federal lawsuit against local startup company Moh-BEEL USA for infringing on its use of the phonetic spelling of the city's name.

According to an 11-page complaint filed March 19, Mobtown Merch has used its "moh-BEEL" mark on clothing and koozies since at least September 2016. On October 25, 2017, it applied to register the mark with the United States Patent and Trademark Office. On Feb. 27 of this year, the trademark was registered by the Alabama Secretary of State.

Allegedly, the defendant, Frederick F.B. Sims, doing business as Moh-BEEL USA, "hoped to trade on plaintiff's efforts and expense by promoting a confusingly similar brand," according to the complaint, which admits Moh-BEEL USA actually beat Mobtown Merch to the federal trademark office, providing an exhibit of the defendant's application dated Sept. 28, 2017 — four weeks before Mobtown Merch made the same move.

But the plaintiffs contend "as competitors and Mobile, Alabama, neighbors, [the defendants] have been familiar with the plaintiff and its [Moh-BEEL] mark for at least one year," yet "began deliberately, willfully and maliciously offering goods under the nearly identical MOH-BEEL mark."

Mobtown Merch has listed five causes of action against Moh-BEEL USA including violations of the Lanham Act, Alabama State Trademark Infringement, Common Law Trademark/Service Mark Infringement, violations of the Alabama Deceptive Trade Practices Act and Unjust Enrichment Under Common Law.

Rebecca Maisel, a principal of Mobtown Merch and signatory on the trademark application, said she preferred to let the court sort it out, but the spelling belongs to them.

"We're going to take this complaint seriously and we take our creative license seriously," she said, "At the end of the day, he's out there selling his products trying to make money off something we created."

Sims referred questions about the lawsuit to Joseph Donaldson, who called himself "part of the Moh-BEEL USA organization." According to Donaldson, there is no ill will, and Moh-BEEL USA is less of a clothing brand than it is a community organization and the pioneer of team in the recently established women's softball league American Softball Association.

"This organization is one for recognizing everything positive coming from Mobile," Donaldson said. "We go around and try to empower the community around us as we promote positivity."

Donaldson said the lawsuit was the latest in a series of communication with Mobtown Merch "trying to scare us off," but claimed geographical representations cannot be trademarked, and further said the addition of "USA" on the end differentiates one mark from another.

"It's a free world and a big market — you look at any other city and there are tons of companies using the city's name," he said. "The city of Mobile owns 'Moh-BEEL' and its geographic representation — we cannot rightfully say this is ours. Nobody can claim it because it's the city of Mobile's."

Meanwhile, Cortina Murray, owner of Optera Creative, was tickled Mobtown Merch filed the complaint. As early as 2013, Optera sold a T-shirt with a USS Alabama battleship logo proclaiming "It's Pronounced Moh-Beel." In addition to using the phonetic spelling of Mobile, Mobtown Merch has since created its own USS Alabama logo proclaiming "Defend the Delta."

"This is a subject that is close to my heart," Murray said. "We originally did our products with a logo of our own design with that spelling beginning in 2013 ... then at Ten Sixty Five, I saw the Mobtown Merch stuff emerge and they took that spelling and had an illustration very similar to our battleship illustration."

Murray said rather than litigate over the logo or spelling, Optera simply phased out their products, believing Mobtown Merch was contributing proceeds to the nonprofit Jake Peavy Foundation.

"Traditionally you are trademarking the visual representation of the word," she said. "The logo and the treatment of it ... I thought maybe it was foolish on our part not to protect it more heavily at the time, essentially defending it by the frequency of its usage, but we sold it and promoted it with our mark on it, but we didn't invest in an attorney ... we even won an ADDY award for that campaign," she concluded. ■

thumbnail (JPEG Image, 1068 × 1898 pixels) - Scaled (45%)    https://apis.mail.yahoo.com/ws/v3/mailboxes/@.id==VjN-cbnCI7Ll..

*EXHIBIT E*

✕ **Clothing compan...**    **SHARE**    ⋮

🔒 lagniappemobile.com







# Clothing company files suit over phonetic spelling of city's name

Posted by Gabriel Tynes | Apr 10, 2018 | Bay Briefs | 0

💬 | ★★★★★

EXHIBIT E



**Steve Hampton**
**Moh-BEEL USA** did you
notice that **Mobtown Merch**
is suing you for moh {dash}
beel, which you've clearly
used, but that they
themselves have never used
on clothes? i.e. they use the
phonetic representation,
which uses an interpunct
and not a dash, on their
various materials?

If you want to get technical
about it, they've only used
that trademark designation
on their website. Which
constitutes use, but their
lawsuit doesn't mention
website use as a basis, it
mentions apparel use, which
they haven't done.

If you need a professional on

https://mail.yahoo.com/neo/launch?.src=ym&reason=myc#4815882971

EXHIBIT F 4pgs

EXHIBIT F 4pgs

9



EXHIBIT F



EXHIBIT F



#community #mobtown #basketball #camp #skills #drills





👍 3                              3 Shares

👍 Like        💬 Comment        ↪ Share

557 people saw this post ›        Boost Post

EXHIBIT F

